## Western Union Telegraph Company v. J. E. De Andrea.

Decided March 2, 1907.

**1.—Delay in Delivering Telegram—Parent and Child—Mental Anguish.**

A parent may recover damages for mental anguish occasioned by the negligence of a telegraph company in delivering a message whereby the parent was prevented from being with his infant child ten months of age for the space of one hour before the child became unconscious and died.

**2.—Charge on Weight of Evidence—Positive Error, When.**

Where the evidence was conflicting as to the length of time plaintiff would have been with his sick child before it became unconscious, but for the delay in delivering the telegram in question, it was error, because upon the weight of the evidence, for the court in its charge to assume that but for such delay the plaintiff would have been with his child a certain length of time. In a case such as this, where the law in a large measure commits to the common sense and sound discretion of the jury the amount of damages to be assessed, it must affirmatively appear that the error was harmless, else the judgment will be reversed.

Appeal from the District Court of Dallas County. Tried below before Hon. Richard Morgan.

*W. L. Lindsley* and *Geo. H. Fearons,* for appellant.—The law will not permit a recovery for mental suffering resulting by reason of the

delay in the delivery of a telegram calling a father to the bedside of his ten-months-old child, where it appears that he could not have been with the child more than one hour prior to the time it became unconscious, and it further appears that he was with his child several days prior to its death.

The undisputed evidence in this case showing that the defendant had reasonable office hours at Purcell, I. T., at the time the message was filed, and that such hours were from 8 a. m. to 8 p. m. on week days, and from 8 a. m. to 10 a. m. and from 4 p. m. to 6 p. m. on Sundays, and that there was unavoidable interruption of the defendant's wires between Dallas and Purcell between the hours of 4 and 6 p. m. on Sunday, March 20, 1904, it was error for the court to refuse to instruct the jury to return a verdict in favor of the defendant. Western Union Tel. Co. v. Neel, 86 Texas, 368; Western Union Tel. Co. v. Birge-Forbes Co., 69 S. W. Rep., 181.

The court erred in its charge to the jury wherein he used this language: "If the said telegram had been delivered to plaintiff by defendant at any time prior to midnight of Sunday, March 20, 1904, plaintiff could and would have come to Dallas by a train that would have put him into Dallas on the morning of Monday, March 21, 1904, and would have enabled him to have been with his child several hours while it was conscious and able to recognize him," in that said charge is on the weight of the evidence and contrary to the evidence which conclusively shows that the plaintiff could not in any event have been with his child more than one hour had he left Purcell at midnight on March 20, 1904.

*F. M. Etheridge, Rhodes S. Baker* and *H. E. Jackson,* for appellee.

TALBOT, Associate Justice.—This suit was instituted by appellee, DeAndrea, to recover of appellant, the Western Union Telegraph Company, damages for an alleged delay in delivering to him the following telegram:

"Dallas, Texas, March 20, 1904.

Mr. J. E. DeAndrea, Purcell, I. T.,
　　　　Corner First Avenue and Monroe Street.
Come at once. Baby very ill.
　　　　　　　　(Signed) R. G. Clem."

It was alleged, in substance, that, on the day said message was accepted by appellant for transmission, appellee's wife and his child, about one year of age, were visiting in Dallas, Texas; that said child was then very ill, and his wife, with the view of advising him of such illness and calling him to the bedside of his said child, caused to be delivered to appellant's agents at Dallas, Texas, about 12 o'clock, noon, on the 20th day of March, 1904, the message above set out; that said message was not delivered to appellee until about 11:38 o'clock a. m., March 21, 1904, and that by reason of the delay he failed to reach his child until the afternoon of March 21, 1904; that when he arrived the sickness of his child had become so aggravated

it was no longer conscious and was incapable of recognizing appellee and manifesting any affection for him and was incapable of appreciating any manifestation on his part of affection toward the child; that said child, after lingering in said unconscious condition for a few days, died without having regained consciousness at any time. It was further alleged that the child during the entire night of March 20, and the entire forenoon of March 21, 1904, was conscious and was expecting appellee, and frequently called for him; that it was very affectionately disposed toward appellee, and that had the message been delivered within a reasonable time appellee could and would have left Purcell on a train in time to have arrived at the bedside of his child before it became unconscious, and would have had the privilege of enjoying from six to eighteen hours of companionship with said child prior to its loss of consciousness; that by reason of being deprived of the society of his sick child, and of seeing it while it was conscious, etc., he has suffered great mental anguish and pain to his damage in the sum of $1,900.

Appellant pleaded general and special demurrers, a general denial and especially that on March 20, 1904, it had and maintained at Purcell reasonable office hours, within which it transacted business and that said office hours were from 8 a. m. to 8 p. m. during the week days and from 8 a. m. to 10 a. m. and from 4 p. m. to 6 p. m. on Sundays; that the message in question was accepted for transmission on Sunday, March 20, 1904, but that it was not received by it until 2:12 p. m. on said day; that by reason of said office hours it was unable to transmit said message to Purcell prior to four and after six o'clock on said day, and was unable to transmit it between the hours of four and six o'clock p. m. on said date, because of wire trouble on its lines caused by circumstances over which it had no control. To this defense appellee replied by supplemental petition, that appellant's agent to whom the message was delivered for transmission was notified of the imperativeness of the message being at once delivered, and that said agent did then and there contract and agree that said message would and should be immediately and with extraordinary dispatch, transmitted and delivered to appellee at Purcell. A jury trial resulted in a verdict and judgment in favor of appellee for the sum of $1,900, from which appellant has appealed.

Appellant by its first assignment of error contends that the uncontradicted evidence shows that appellee's child was but ten months and two days old; that appellee was denied the privilege of being with said child only one hour while it was conscious; that under such circumstances the law will not permit a recovery for mental suffering resulting by reason of any delay on appellant's part to deliver the message described in the petition, and therefore the judgment of the court below is contrary to law. In this contention we do not concur. No argument, reason, or authority is presented by able counsel for appellant to sustain it, and we think it would be quite difficult to do so. That a parent, under the circumstances disclosed by the record in this case, would naturally suffer mental anguish is not, nor can it be successfully denied. Nor do we understand that the proposition contended for would be urged but for the tender years of the child. There was

evidence tending to show that the child was only ten months old, but that it was unusually intelligent, greatly attached to its father and capable of manifesting its affection for him and of appreciating the father's affection for it. That it understood the statements of others touching its father's expected arrival and shortly before the loss of consciousness called for him. In the case of Western Union Tel. Co. v. Piner, 9 Texas Civ. App., 152, the appellee sued to recover damages for delay in delivering to him a message calling him to the bedside of his father who was sick at Bonham, Texas. Had the telegram been delivered within a reasonable time, the appellee would have reached Bonham in time to have been with his father three or four hours while he was conscious, but by reason of the negligence of the company he did not arrive until his father had become unconscious and remained so until his death. He was permitted to recover, and although his right to do so was not denied, yet, clearly such denial, had it been made, would have been unavailing. If, then, the mental anguish of the plaintiff in this case would constitute a basis of damages in a case where the relative was older, which, as said, does not seem to be controverted, no satisfactory reason can be advanced, it occurs to us, why it should not constitute a like basis in the instant case.

The tenth assignment complains of the following portion of the court's charge: "If the said telegram had been delivered to plaintiff by defendant at any time prior to midnight of Sunday, March 20, 1904, plaintiff could and would have come to Dallas by a train that would have put him into Dallas on the morning of Monday, March 21, 1904, and would have enabled him to have been with his child several hours while it was conscious and able to recognize him." This charge, as insisted by appellant, is clearly upon the weight of the evidence. As shown, appellee sued to recover damages for mental anguish suffered on account of being deprived of the companionship of his child during such time as he would have been with the child while it was conscious but for the alleged negligence of appellant in failing to deliver to him, within a reasonable time, the telegram. The jury was authorized to, and doubtless did, conclude that the longer the time that appellee would have enjoyed such companionship with his child but for the alleged negligence of appellant, correspondingly greater was his mental anguish and consequent damages resulting from such negligence. There was evidence to the effect that had the telegram been promptly delivered appellee could and would have left Purcell on a train passing there about 2 o'clock p. m., March 20, 1904, arriving in Dallas that night, and some time before his child became unconscious; but such evidence did not warrant the assumption, that negligence on the part of appellant in failing to deliver said telegram at such time as would have enabled appellee to take that train, was conclusively established; and this assumption, it seems, must be indulged in order to justify the charge or statement to the jury under consideration. With reference to the time that appellee would have arrived in Dallas and at the bedside of his sick child had the telegram been delivered in time for him to have left Purcell during the night of March 20, 1904, he testified, (putting it in narrative form), as follows: "There was one train that would have left there (Purcell) Sunday at 2 or 2:10

and there is another train that leaves there at 11:55 at night. If I had left on that train (11:55) I don't know when I would have arrived in Dallas. I suppose about nine or ten o'clock the next morning. I would have got in the next morning about nine or ten o'clock. I don't know just exactly, but about that time. I was due in Ft. Worth at 8:20 or 8:40. If I had caught that two o'clock train I would have got here (Dallas) that night. If I had got the message after two o'clock I would have got here the next morning before noon. I would have got to Ft. Worth about 8:40 and would have got here about 10:30 which would have put me out to the house about eleven o'clock." Mrs. DeAndrea, wife of appellee, testified that the child was conscious until about twelve o'clock on Monday, March 21, 1904; that it was unconscious from twelve o'clock noon on Monday until eleven o'clock at night. In this state of evidence, as has been noted, the trial court tells the jury, in effect, that, had the telegram been delivered to appellee at any time prior to midnight of Sunday, March 20, 1904, he could and would have reached Dallas and been with his child *several hours* while it was conscious. This was error for which the case must be reversed. The evidence did not warrant the unqualified statement of the court that, had the telegram been delivered, as stated in the charge, appellee could and would have arrived in Dallas in time to have been with his child "several hours while it was conscious," and we are unable to say that the error did not materially influence the jury in arriving at the amount of damages assessed. It was a "positive error" and as said in the case of Gulf, C. & S. F. Ry. Co. v. Johnson, 91 Texas, 569, "the court can not enter into speculation as to what conclusions the jury may have arrived at, in order to avoid the force and effect of such error upon a verdict, and more especially is this true in a case like the present, when the law in a large measure commits to the common sense and sound discretion of the jury the amount to be assessed." In such a case if it does not appear from the record that the error was harmless the judgment must be reversed. Treating the testimony quoted above, as does appellee, as being indefinite and leaving the time that appellee would have been with his child while it was conscious, had the telegram been delivered before midnight Sunday, March 20, 1904, uncertain, it seems the jury might have found with equal propriety, had the question been left for their determination, that such time was less than one hour, as that it was more than one hour, and in such event, or in the event they found such time to be exactly one hour, it is quite probable their verdict would have been for a less amount. That the statement under discussion was made in what might be, ordinarily, termed the introductory part of the court's charge does not relieve it of its probable injurious effect. It is not an "isolated clause" of the charge, as argued by counsel for appellee, nor does it purport to be a part of the court's statement of the issues joined. On the contrary, it immediately precedes that portion of the charge wherein the law is applied to the facts and is an emphatic statement of an important fact, involved in the determination of the amount of appellee's damages, which, in our opinion, was not conclusively established by the evidence.

But it is insisted by appellee that this error in view of other portions

of the court's charge was harmless; that in the submission of the issues upon which appellant's liability was made to depend, "the charge does not import into the case in any degree, the question of the time plaintiff could have been with his child before unconsciousness began," and excluded from the jury any irrelevant matter by authorizing them to consider only whether, "plaintiff suffered mental pain and anguish by reason of not having been with his child while it was conscious." The language in quotation marks is quoted by appellee from the court's charge, and is but a part of one sentence thereof, the remaining portion of it being as follows: "and if you further find from the testimony before you that his failure so to be with his said child until it became unconscious was caused by the failure of the defendant to deliver said telegram to plaintiff before midnight of Sunday, March 20, 1904," and such failure was caused by the negligence of defendant, then appellee was entitled to a verdict.    It is clear, we think, that this portion of the charge does not cure the error referred to.    In no sense does it withdraw or qualify the objectionable statement.    The basis of appellee's action is for mental anguish suffered as a result of not being with his child the length of time he would have been with it while conscious but for appellant's alleged negligence.    The court had already told the jury that if the message had been delivered any time before midnight of Sunday, March 20, 1904, appellee would have been with his child "several hours while it was conscious."    This fixed the time that appellee was deprived of being with his child while it was yet conscious as an established fact not to be ascertained by the jury, and the charge relied on by  appellee in support of his position and that quoted, simply submitted to the jury the issues, whether appellee had suffered mental anguish by reason of not having been with his child while conscious and whether the failure to deliver the telegram before midnight of Sunday, March 20, 1904, was negligence.    The question of the time appellee could have been with his child while it was conscious, having been thus fixed by the court's statement of it, the inference is reasonable, if indeed it does not necessarily follow, that the jury proceeded to consider and determine only the issues above mentioned, and based their conclusion of the extent of appellee's mental anguish and the damages sustained by him in consequence thereof, upon the time so fixed.

Again, in another portion of the charge the jury were told that "if they found for the appellee, the measure of his damages would be a reasonable pecuniary compensation for all such mental pain and anguish, if any, as he may have suffered as the direct result of not having been with his child during the time that he was prevented from being with his said child by defendant's negligence."    This charge, if not positive error within itself, in that it permitted the jury to give damages for mental suffering after the child became unconscious up to the time of appellee's arrival, as contended by the appellant under its twelfth assignment, so intensifies the error of the statement under discussion as clearly forbids the conclusion that it was harmless.

It is further insisted that said statement does not constitute reversible error because the time when appellee could . have reached the bedside of his child and the time when said child became uncon-

scious is not definitely shown and the word "several" qualifying "hours" means "an indefinite quantity more than one," hence the charge leaves the time appellee could have been with his child while it was conscious indefinite and is not therefore on the weight of the evidence. To this view of the matter we do not agree. Accepting the definition given of the word "several" still we think it must be said 'that, when used to express time by the hour it does not mean a fractional part of an hour, but an uncertain number of hours, not less than two.

Several other assignments are urged, but we deem it unnecessary to discuss them. They have been considered with the conclusion reached that no reversible error is disclosed by them.

For the error indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Application for writ of error dismissed.